## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

ALAN PULSIFER,

    Plaintiff,

    v.                        Case No. MJM-22-3080

DOUGLAS PRINCE

    Defendant.

### MEMORANDUM OPINION

Plaintiff Alan Pulsifer, acting pro se, brings this action under 42 U.S.C. § 1983 against defendant Douglas Prince and unnamed defendants "Doe 1–20," alleging violations of his Fourth and Fourteenth Amendment rights. Am. Compl. (ECF No. 21). Plaintiff's claims arise out of a 2022 traffic stop and subsequent arrest. *Id.* Plaintiff filed his initial Complaint in this Court on November 29, 2022, under 28 U.S.C. § 1331. ECF No. 1. Thereafter, on March 14, 2023, Plaintiff filed the operative Amended Complaint.

Currently pending is Prince's Motion to Dismiss or, in the Alternative, for Summary Judgment (the "Motion"). ECF No. 23. The Motion is fully briefed, and no hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, the Court will GRANT Prince's Motion, and the Amended Complaint will be dismissed with prejudice.

## I.    BACKGROUND

The following facts are drawn from the Amended Complaint and documents incorporated into the Amended Complaint by reference.[1]

---

[1] When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must take the factual allegations in the complaint as true, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016), and consider documents either attached to the complaint as exhibits or incorporated by reference, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

On the evening of Friday, September 2, 2022, Plaintiff and a friend, Erica Sully, visited a restaurant in Grasonville, Maryland, where Plaintiff consumed "a modest and responsible amount of alcohol." Am. Compl., ECF No. 21, ¶¶ 12–13. At approximately 11:45 p.m., Plaintiff and Sully left the restaurant and got into Plaintiff's vehicle. *Id.* ¶ 15. Plaintiff wanted to visit a public pier but did not recall specifically where it was. *Id.* ¶¶ 16–18. Plaintiff drove to where he believed the pier was located. *Id.* ¶¶18–26. He drove "slowly" around the area, "looking around and behind" several businesses and buildings for the pier. *Id.* ¶ 20. He "approached and stopped at the entrance to" a yacht yard, then "backed his vehicle away from the entrance . . . ." *Id.* ¶ 25. At this point, "having not found the [pier], [Plaintiff] decided to stop momentarily" and park his vehicle next to a chain link fence by a nearby parking lot. *Id.* ¶ 26. He turned off his engine and headlights and retrieved two water bottles from the back seat for himself and Sully. *Id.* ¶ 27.

Approximately one minute later, defendant Trooper First Class (TFC) Prince pulled up in a marked police vehicle. *Id.* ¶ 28. "Prince positioned his vehicle to obstruct [Plaintiff's] exit." *Id.* Plaintiff "understood that he was not free to leave and was being detained." *Id.* ¶ 32. After a brief conversation, Prince requested Plaintiff's driver's license and stepped away. *Id.* ¶¶ 33–34. Prince returned a few minutes later and requested that Plaintiff complete a standardized field sobriety test ("SFST"), which Plaintiff refused. *Id.* ¶ 35. Prince directed Plaintiff to exit the vehicle and again asked Plaintiff to complete a sobriety test, which Plaintiff again refused. *Id.* ¶ 37. Prince ordered Plaintiff to walk to the front of the vehicle, which Plaintiff did. *Id.* ¶ 38. Plaintiff believes "Prince intended [this] act to . . . be an abbreviated field sobriety test" so Prince could establish probable cause. *Id.* ¶ 42. Prince requested, for a third time, that Plaintiff submit to a sobriety test, which Plaintiff again refused. *Id.* ¶ 43. Prince then arrested Plaintiff and placed him in the police vehicle. *Id.* ¶ 44. With Plaintiff's permission, Prince turned Plaintiff's vehicle over to Sully, who submitted

to a breathalyzer that indicated her blood alcohol content (BAC) was 0.067, below the legal driving limit. *Id.* ¶¶ 49–51.

Prince transported Plaintiff to the Maryland State Police Barracks in Centreville, Maryland. *Id.* ¶ 52. At the barracks, Plaintiff stated he would submit to an alcohol concentration test. *Id.* ¶ 54. The test indicated Plaintiff's BAC was 0.03. *Id.* ¶ 57. Prince allowed Plaintiff to call Sully to come pick him up, but took Plaintiff's phone, belt, and shoelaces and "locked him into a small dirty cell with a cement bench and a filthy metal toilet." *Id.* ¶ 58.

Sully arrived approximately an hour later. *Id.* ¶ 59. Prince removed Plaintiff from the cell and handed him citations alleging Plaintiff violated Maryland law for: failure to obey a traffic control device (Md. Code Ann., Transp. § 21-201(a)(1)); reckless and negligent driving (*id.* at § 21-901.1(a), (b)); and driving while impaired by alcohol (*id.* at § 21-902(b)(1)(i)). Am. Compl. ¶ 59. After Plaintiff expressed "that the citations were a complete waste of time," Prince responded, "Then you should have taken the field sobriety test." *Id.* ¶ 65. The charges were ultimately dropped by the State's Attorney. *Id.* ¶ 83. Nonetheless, the arrest, detention, and criminal charges caused Plaintiff physical, emotional, and financial injury. *Id.* ¶¶ 84–85.

Prince completed a police report, which details why Prince believed that Plaintiff was intoxicated. ECF No. 28-3. Specifically, Prince states Plaintiff smelled of alcohol, had bloodshot and glassy eyes, and stumbled when asked to walk. *Id.* Plaintiff contends these allegations are false. Am. Compl. ¶¶ 68–75. Plaintiff also believes Prince "conspired with one or more other persons to fabricate, alter, or conceal evidence related to the incident" during the police report's review and approval process. *Id.* ¶ 80.

The Amended Complaint asserts claims under 42 U.S.C. § 1983 against Prince and unnamed "Doe" defendants for violations of the Fourth (Counts I–V) and Fourteenth (Counts VI–

IX) Amendments. The Fourth Amendment claims—variously titled unlawful stop, unlawful search, unlawful arrest, and malicious prosecution—relate to the alleged lack of reasonable suspicion to make a traffic stop and lack of probable cause to make an arrest. The Fourteenth Amendment claims relate to alleged dishonesty—*i.e.*, conspiracy, fabricated evidence, and filing a false police report—and are essentially due process claims.

Defendant moves to dismiss all claims. ECF No. 23. In his response in opposition to the Motion, Plaintiff requests voluntarily dismissal of Count III (unlawful search) and Counts VIII and IX (conspiracy to fabricate evidence). ECF No. 28 at 3. The Court will grant Plaintiff's request and dismiss Counts III, VIII, and IX. The conspiracy claims in Counts VIII and IX were the only claims brought against the Doe defendants. Accordingly, the Doe defendants shall be dismissed. The remaining issues presented in the Motion concern whether the Amended Complaint states claims for which relief may be granted based on unlawful stop (Counts I and II), unlawful arrest (Count IV), malicious prosecution (Count V), and fabrication of evidence (Counts VI and VII) by Prince.

## I.    LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible

on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to

the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

Ordinarily, a court "is not to consider matters outside the pleadings or to resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, courts may "consider documents that are explicitly incorporated into the complaint by reference" or "document[s] submitted by the movant" that are "integral to the complaint[,]" if "there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). Additionally, "courts may take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 502–03 (D. Md. 2019).

If the court otherwise considers matters outside the pleadings pursuant to Fed. R. Civ. P. 12(d), "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). If the court converts the motion to dismiss to a motion for summary judgment in this fashion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* A court may not convert a motion to dismiss to one for summary judgment *sua sponte* unless it provides notice to the parties that it will do so. *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (noting that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to have notice that conversion under Rule 12(d) may occur, and the court need not "notify parties of the obvious." *Id.*

A district court has "complete discretion" to decide whether "to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion . . . thereby converting the motion, or to reject it or simply not consider it." 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 2284 (3d ed. 2004, 2011 Supp.). Generally, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165–66.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court shall grant a party's summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). To avoid summary judgment, the non-moving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *see also Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *Gordon v. CIGNA Corp.*, 809 F.3d 463, 470 (4th Cir. 2018).

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2012). However, the non-moving party cannot "complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). "If a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a [Fed. R. Civ. P.

56(d)] affidavit." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). A Rule 56(d) affidavit specifies reasons the non-moving party "cannot present facts essential to justify its opposition" to a summary judgment motion. Fed. R. Civ. P. 56(d). "[F]ailure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods Ltd.*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961).

To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." *Hamilton v. Mayor of Balt.*, 807 F.Supp.2d 331, 342 (D. Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (quoting *Strag v. Bd. of Trs.*, 55 F.3d 943, 953 (4th Cir. 1995)); *but see Pisano v. Strach*, 743 F.3d 927 (4th Cir. 2014) ("A court should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant.") (citation omitted). At this stage, the Court will not convert the Motion to one for summary judgment.

Video exhibits attached to the Motion contain footage from Prince's body-worn camera, the police vehicle's rear-facing camera, and the backup officer's body-worn camera. The Court finds that it could consider this video footage without converting the Motion to one for summary judgment. *See, e.g.*, *Zsigray v. Cnty. Comm'n*, 709 Fed. App'x 178 (4th Cir. 2018) (finding district court did not err in considering video recording of incident where the video was incorporated into complaint by reference, integral to the complaint, and the authenticity was not challenged); *Yousif*

*v. Hailey*, Civ. No. 23-0081, 2023 WL 7413328, at *1 n.3 (E.D. Va. Nov. 9, 2023) (for motion to dismiss, considering body camera footage that was not referenced by complaint where plaintiff referred to footage in his opposition and did not challenge its authenticity); *Estate of Green v. City of Annapolis*, Civ. No. JRR-22-3198, 2023 WL 6381453, at *7 (D. Md. Sept. 30, 2023) (considering body camera footage for motion to dismiss where plaintiffs acknowledged that "all the facts and circumstances relevant to [the plaintiffs'] claims were recorded by the body camera"). However, the Court finds that it may properly decide the motion without considering the video exhibits in this case. The Motion will be decided solely as a motion to dismiss under Rule 12(b)(6).

Filings by pro se litigants are held "to less stringent standards than formal pleadings drafted by lawyers." *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). The Court will not "attempt to discern the unexpressed intent of the plaintiff," but will "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (internal quotations and citation omitted).

## II.   DISCUSSION

### A.  Fourth Amendment Claims (Counts I, II, IV, and V)

In Counts I, II, IV, and V, Plaintiff asserts claims under 42 U.S.C. § 1983 for unlawful stop, unlawful arrest, and malicious prosecution in violation of the Fourth Amendment of the U.S. Constitution.

"[T]he Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Caniglia v. Strom*, 593

U.S. 194, 197–98 (2021) (internal quotation marks omitted). The "ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 573 U. S. 373, 381, (2014) (internal citation and quotation marks omitted). The Fourth Amendment will be construed "in a manner which will conserve public interests as well as the interests and rights of individual citizens." *Kyllo v. United States*, 533 U.S. 27, 40 (2001) (citing *Carroll v. United States*, 267 U.S. 132 (1925)). "The pertinent inquiry is whether [the officer's] actions were 'unduly intrusive,' based on the intrusion's methods and purpose." *Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 194 (4th Cir. 2015) (quoting *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 583, 585 (6th Cir. 2005)). This evaluation requires a "flexible standard" that balances the needs of the government against the invasion on individual privacy. *Id.* (quoting *Turner v. Dammon*, 848 F.2d 440, 445–46 (4th Cir. 1988)).

A seizure occurs within the meaning of the Fourth Amendment when an "officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16, (1968). "Where, as here, physical force is absent, a seizure requires both a 'show of authority' from law enforcement officers and 'submission to the assertion of authority' by the [citizen]." *United States v. Stover*, 808 F.3d 991 (4th Cir. 2015) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). "[T]here is no seizure without [the person's] actual submission." *Brendlin v. California*, 551 U.S. 249, 254 (2007).

To determine whether police have displayed a show of authority, courts apply the test set forth in *United States v. Mendenhall*, 446 U.S. 544 (1980) (plurality opinion). The critical question is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 554. Courts may consider several factors in determining whether an officer's actions would convey to a reasonable person that he was not free

to leave. *See, e.g.*, *Michigan v. Chesternut*, 486 U.S. 567, 575–76 (1988) (listing examples of police behavior that "communicate[] to the reasonable person an attempt to capture or otherwise intrude upon [his] freedom of movement," including "activat[ing] a siren or flashers," "command[ing a person] to halt," or "operat[ing] the [police] car in an aggressive manner to block [a person]'s course"); *United States v. Jones*, 678 F.3d 293 (4th Cir. 2012) (listing factors including "whether [the officers] attempted to block [a person's] departure or restrain his movement, whether the officers' questioning was non-threatening, and whether they treated the defendant as though they suspected him of 'illegal activity rather than treating the encounter as "routine" in nature'") (quoting *United States v. Gray*, 883 F.2d 320, 322–23 (4th Cir. 1989)).

In this case, Plaintiff has asserted sufficient facts to support a claim that a seizure occurred. Specifically, the Amended Complaint alleges that, while Plaintiff was parked near a parking lot, Prince pulled up in a marked police vehicle and positioned the vehicle "to obstruct Pulsifer's exit." Am. Compl. ¶ 28. Prince, wearing a police uniform and carrying a firearm, approached Plaintiff's vehicle. *Id.* ¶¶ 29–30. Plaintiff "understood that he was not free to leave and was being detained." *Id.* ¶ 32. Further, after speaking with Plaintiff, Prince requested Plaintiff's driver's license and walked away from Plaintiff's vehicle. *Id.* ¶¶ 33–34. By giving Prince his driver's license, Plaintiff indicated he was submitting to Prince's show of force. Further, even if this initial stop did not affirmatively demonstrate Plaintiff's submission to Prince's show of authority, Plaintiff has alleged sufficient facts that a seizure later occurred when Plaintiff complied with Prince's order to exit the vehicle. Am. Compl. ¶ 36 ("Prince then ordered Pulsifer to exit his vehicle, and Pulsifer immediately complied."); *see also United States v. Gordon*, No. 22-4282, 2023 WL 2446674, at *2 (4th Cir. March 10, 2023) (finding that a "seizure occurred when [citizen] complied with [officer's] order to step out of the car"). Considering these facts, it is likely that a reasonable person

in Plaintiff's position would believe that he was not free to leave. *See Mendenhall*, 446 U.S. at 554. Thus, Plaintiff has alleged sufficient facts that a seizure occurred under the meaning of the Fourth Amendment.[2]

Next, the Court must determine whether Plaintiff has sufficiently alleged that the seizure was unreasonable. "A government agent's search is unreasonable when it infringes on an 'expectation of privacy that society is prepared to consider reasonable.'" *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)); *see also United States v. Jones*, 565 U.S. 400, 406 (2012) ("[A] violation occurs when government officers violate a person's reasonable expectation of privacy . . . .") (internal citation and quotation marks omitted). In the traffic-stop context, "the tolerable duration of police inquiries . . . is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop . . . and attend to related safety concerns . . . ." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405 (2005)); *see also Knowles v. Iowa*, 525 U.S. 113, 117, 119 (1998) ("A routine traffic stop . . . is a relatively brief encounter and 'is more analogous to a so-called "*Terry* stop" . . . than to a formal arrest.'") (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). The investigative detention must "last no longer than is necessary to effectuate the purpose of the stop . . . ." *Caballes*, 543 U.S. at 420.

Considering the facts alleged in the Amended Complaint, Plaintiff has failed to state a plausible claim that Prince's initial stop was unreasonable. Plaintiff was driving "slowly" around the area, "looking around and behind" several businesses and buildings for a public pier. Am.

---

[2]    Prince argues that his body camera footage "establishes that Plaintiff's car was already stopped and parked and that TFC Prince's car did not block Plaintiff's car in." ECF No. 23-2 at 12. Even if the police vehicle did not entirely obstruct Plaintiff's departure, this is only one factor to consider. Because Prince pulled up near Plaintiff, exited his vehicle, and approached Plaintiff's vehicle, a reasonable person in Plaintiff's position would have believed that he was not free to leave.

Compl. ¶ 20. He "approached and stopped at the entrance to" a yacht yard before "back[ing] his vehicle away from the entrance . . . ." *Id.* ¶ 25. He then put his vehicle in park and turned off his engine next to a nearby parking lot. *Id.* ¶ 26. Plaintiff also concedes that there was a "Motorcycle Parking Only" sign where he was parked. ECF No. 28 at 7. Plaintiff's driving, as described in the Amended Complaint, would have appeared abnormal, irregular, and likely erratic to a reasonable officer. Of course, Plaintiff had a reasonable explanation for driving slowly around the area: he was searching for the public pier. This driving behavior, however, would also be consistent with, and give rise to, reasonable suspicion of criminal activity. *See, e.g.*, *United States v. Stacks*, 571 Fed. App'x. 163, 170 (4th Cir. 2014) (recognizing suspiciousness of "driving slowly in and out of three hotel parking lots without making any stops"); *United States v. Brown*, No. 22-0024, 2022 WL 4464845, at *3 (E.D. Ky. Sept. 26, 2022) ("When driving, nervousness indicating possible criminal activity may look like the person driving slowly, failing to obey traffic laws, or taking an unusual route.").[3] Accordingly, Plaintiff has failed to state a claim that Prince's initial stop was unreasonable considering Plaintiff's irregular and potentially illegal driving behavior.

Notwithstanding the reasonableness of the initial stop, Plaintiff can still survive a motion to dismiss if he sufficiently pleaded that Prince was unreasonable in continuing his investigation by requesting that Plaintiff exit the vehicle and complete a SFST. The tolerable duration and extent

---

[3]     In the Maryland State Police ("MSP") report Prince states he observed Plaintiff commit several traffic violations before approaching Plaintiff's vehicle while it was stopped. ECF 28-3 at 4. Plaintiff contests certain factual allegations relating to the traffic violations in the MSP report, such as Prince's contention that there were "multiple vehicles" on the street when Plaintiff failed to use his turn signal. Am. Compl. ¶ 68. Plaintiff does not, however, substantively dispute that he committed traffic violations. *See, e.g.*, ECF No. 28 at 6 (Plaintiff "has no memory of whether he used a [turn] signal or not"); *see also id.* at 7 (recognizing that "[t]here were signs that said 'Motorcycle Parking Only'" but contending that Prince "was not empowered to enforce [the signs] absent a request form the property owner"). Nonetheless, at this stage, the Court need not consider whether Plaintiff committed any specific traffic violations. Prince's initial stop of Plaintiff's vehicle was reasonable based on Plaintiff's irregular driving behavior as described in the Amended Complaint.

of the detention is determined by the seizure's "mission." *Rodriguez*, 575 U.S. at 354 (citation omitted). In this case, the Amended Complaint makes clear that, after approaching Plaintiff, Prince's "mission" was to determine whether Plaintiff was under the influence. *See* Am. Compl. ¶ 35 ("Prince approached Pulsifer, and requested that Pulsifer submit to a field sobriety test . . . ."). In this regard, Prince needed a "reasonable, articulable suspicion" to justify proceeding with an investigation into whether Plaintiff was driving under the influence or while intoxicated. *See Gordon*, 2023 WL 2446674, at *1 ("An officer may conduct an investigatory stop when he 'has reasonable, articulable suspicion that criminal activity may be afoot.'") (quoting *United States v. Gist-Davis*, 41 F.4th 259, 263 (4th Cir. 2022)); *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (an officer must have had more than an "inchoate and unparticularized suspicion or 'hunch'" in effecting a seizure) (quoting *Terry*, 392 U.S. at 27).

The *Gordon* court described "reasonable suspicion" as follows:

> Reasonable suspicion is "considerably less than a preponderance of the evidence," [*Gist-Davis*, 41 F.4th at 264] (cleaned up), and "is a less demanding standard than probable cause." *Id.* "While the government is not required to rule out the possibility of innocent conduct to meet the reasonable suspicion standard, it must articulate some particularized and objective basis for suspecting illegality." *United States v. Feliciana*, 974 F.3d 519, 524 (4th Cir. 2020) (cleaned up). . . . Courts should consider "the totality of the circumstances" and give "due weight to common sense judgments reached by officers in light of their experience and training." *Gist-Davis*, 41 F.4th at 264 (cleaned up).

*Gordon*, 2023 WL 2446674, at *1; *see also United States v. Davis*, 129 Fed. App'x. 35, 36 (4th Cir. 2005) ("In evaluating police conduct in a *Terry* stop, courts must consider the totality of the circumstances . . . including all information available to an officer and any reasonable inferences to be drawn at the time of the decision to stop a suspect.") (citations omitted); *Blasi v. State*, 893 A.2d 1152, 1168 (Md. Ct. Spec. App. 2006) (performing SFST "is constitutionally permissible

when the officer has reasonable articulable suspicion that the driver is under the influence of alcohol).

In *United States v. Turner*, a panel of the Fourth Circuit held that reasonable suspicion existed to justify performing a SFST where evidence demonstrated that the driver's "breath smelled like alcohol, as observed by an officer trained in DUI detection, and that it was 2:15 in the morning and [the driver] intended to drive . . . ." No. 95-5606, 1996 WL 85165, at *1 (4th Cir. Feb. 29, 1996). Maryland courts have similarly "found that signs of intoxication, such as the odor of alcohol emanating from the person of a motorist . . . create at least, 'reasonable grounds' to request that a motorist take an alcohol content test or perform field sobriety tests." *Burno-Whalen v. Maryland*, Civ. No. GJH-15-0564, 2016 WL 1259556, at *6 (D. Md. March 28, 2016) (citing *Motor Vehicle Admin. v. Spies*, 82 A.3d 179 (Md. 2013), and *Blasi*, 893 A.2d at 1152).

"[M]ost cases addressing potential Fourth Amendment violations arising from traffic stops for suspicion of driving under the influence will involve additional indicia of intoxication beyond the suspect's driving pattern." *Amundsen v. Jones*, 533 F.3d 1192, 1200 n.4 (10th Cir. 2008). But some circuits have even held that "driving conduct alone can establish reasonable suspicion of impairment . . . to justify a roadside sobriety test." *Amundsen v. Jones*, 533 F.3d 1192, 1200 n.4 (10th Cir. 2008). Irregular driving conduct may often be justified by an innocent explanation, but this does not eliminate the possibility that a reasonable suspicion exists. *See Feliciana*, 974 F.3d at 524 ("[T]he government is not required to rule out the possibility of innocent conduct . . . ."). These rulings are supported by the fact that SFSTs "do not involve a major intrusion on liberty." *United States v. Frantz*, 177 F. Supp. 2d 760, 763 (S.D. Ohio 2001). Further, any such intrusion caused by a SFST "is reasonable both from the perspective of the driver and of society at large. [SFSTs], when properly administered, are highly reliable indicators of alcohol intoxication." *Id.*

In this case, accepting as true the facts in the Amended Complaint, there were several factors that supported Prince's decision to order Plaintiff out of the vehicle and request Plaintiff to perform a SFST. Prior to the stop, Plaintiff was driving slowly and irregularly. Then, following the stop, Plaintiff admitted he had been consuming alcohol.[4] Because Prince had a reasonable articulable suspicion that Plaintiff was under the influence, Plaintiff has failed to state a claim that Prince unreasonably seized Plaintiff under the Fourth Amendment by ordering him out of the vehicle and requesting he complete a SFST.[5]

Plaintiff's claims for false arrest and malicious prosecution similarly fail.[6] "[T]o state a claim under § 1983 for false arrest in violation of the Fourth Amendment, [a plaintiff] must show that [his] arrest was made without probable cause." *Carter v. Durham*, Civ. No. WMN-14-2635, 2015 WL 641370, at *2 (D. Md. Feb. 12, 2015) (citing *Street v. Surdyka*, 492 F.2d 368, 372–73 (4th Cir. 1974)). Probable cause exists if the evidence before the law enforcement officer is

---

[4]    In the MSP report, Prince observed: "While talking to Pulsifer I noticed he was slurring his words. I detected a very strong odor of an alcoholic beverage emanating from inside the passenger vehicle. . . [and] from [Pulsifer's] breath. I noticed Pulsifer [*sic*] eyes were bloodshot and glassy." ECF 28-3 at 4. Plaintiff further stated that he had one beer. *Id.* Plaintiff contends that his speech was perfectly clear and that his eyes were neither bloodshot nor glassy. Am. Compl. ¶¶ 69–70. Even absent these facts, however, Prince had a reasonable articulable suspicion based on the odor of alcohol and Plaintiff's admission that he had been consuming alcohol.

[5]    Plaintiff's argument that Defendant "would not have detected an odor of alcohol coming from [the] vehicle or from [Plaintiff's] breath" is belied by the other facts in the Complaint. ECF No. 28-1 ¶ 32. Specifically, at the scene, Sully's BAC was 0.067 according to the preliminary breath test. Am. Compl. ¶ 50. Further, at the police station less than an hour after his arrest, Plaintiff's BAC was 0.03. *Id.* ¶ 57; ECF No. 28-3 (Result of Test for Alcohol Concentration). Thus, Plaintiff cannot reasonably contest that Defendant detected an odor of alcohol. The odor of alcohol—and even admitted consumption of alcohol by the driver—could have an innocent explanation. *See Frantz*, 177 F. Supp. 2d at 763 ("Obviously, the consumption of one or two beers is consistent with innocence . . . ."). But "the government is not required to rule out the possibility of innocent conduct to meet the reasonable suspicion standard . . . ." *Gordon*, 2023 WL 2446674, *1 (citing *Feliciana*, 974 F.3d at 524).

[6]    Plaintiff concedes "that his claim for false arrest [has] no merit if . . . Prince's stop of Pulsifer was lawful and Prince had reasonable suspicion to request that Pulsifer take a field sobriety test." ECF No. 28 at 19.

"sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect [has] committed . . . an offense." *Gray v. State*, Civ. No. CCB-02-0385, 2004 WL 2191705, at *6 (D. Md. Sept. 24, 2004) (quoting *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998)). Federal courts in this circuit have found that a refusal to take a sobriety test can contribute to probable cause for a warrantless arrest. *See Ramey v. Hartman*, Civ. No. 6:19-0003, 2020 WL 1450749, at *5 (W.D. Va. March 25, 2020); *McIntyre v. Horry Cnty.*, Civ. No. 4:11-1573-TLW-KDW, 2012 WL 6015944, at *4 (D.S.C. Oct. 18, 2012). Other circuits have ruled similarly. *See Bailey v. City of Howell*, 643 Fed. App'x. 589, 596 (6th Cir. 2016) ("A person's refusal to submit to a field sobriety test, when 'combined with evidence of alcohol consumption,' can give rise to probable cause to arrest the person for driving under the influence of alcohol."). In this case—in addition to the factors discussed above that justified Prince's investigation into Plaintiff's potential intoxication—Plaintiff's refusal to submit to a SFST contributed to Prince's probable cause to make an arrest. Considering the totality of the circumstances and drawing reasonable inferences in favor of Plaintiff, Prince had probable cause to arrest Plaintiff.[7]

## B.  Fourteenth Amendment Claims (Counts VI and VII)

In Counts VI and VII, Plaintiff asserts claims under 42 U.S.C. § 1983 for fabrication of evidence in violation of the Due Process Clause of the Fourteenth Amendment: one count for "fabricat[ing], alter[ing], or conceal[ing] evidence related to the criminal charges"; and a second

---

[7]     Because Defendant had probable cause to arrest Plaintiff, the malicious prosecution claim fails. *See Thompson v. Clark*, 596 U.S. 36, 43 n.2 (2022) (requiring plaintiff "to prove that the malicious prosecution resulted in a seizure of the plaintiff" and "to show a favorable termination of the underlying criminal case against him"); *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009) (plaintiff must "demonstrate both *an unreasonable seizure* and a *favorable termination* of the criminal proceeding flowing from the seizure") (emphasis added).

count for "fabricat[ing] grounds on which [Prince] allegedly relied to detain . . ., arrest . . ., and to file criminal charges against Pulsifer." Am. Compl. ¶¶ 138, 146. Specifically, Plaintiff claims:

> Prince's order to perform a field sobriety test subjected Pulsifer to, and caused Pulsifer to be subjected to, a deprivation of his right, secured by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, to not consent to a warrantless search . . . . But for this violation, . . . Pulsifer would then not have been arrested, detained, charged with crimes, and forced to defend himself.

*Id.* ¶¶ 113, 115.

The Fourteenth Amendment protects "against deprivations of liberty accomplished without due process of law." *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014) (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1979)). The Fourth Circuit has recognized a due process "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." *Id.* (quoting *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005)); *see also Halsey v. Pfeiffer*, 750 F.3d 273, 295–96 (3d Cir. 2014) ("[B]y fabricating evidence for use in a criminal prosecution, a state actor would violate a defendant's [Fourteenth Amendment due process] rights regardless of whether or not the state actor violated other constitutional rights of the defendant."). But "[f]abrication of evidence alone is insufficient to state a claim for a due process violation; a plaintiff must plead adequate facts to establish that the loss of liberty—*i.e.*, his conviction and subsequent incarceration—resulted from the fabrication." *Id.* (citing *Wilmore*, 407 F.3d at 282–83); *see also Mills v. Hassan*, Civ. No. GLR-18-562, 2019 WL 4750338, at *8 (D. Md. Sept. 30, 2019) (rejecting fabrication claim where the plaintiff did "not allege he served any period of incarceration").

As discussed above, Defendant had probable cause to arrest Plaintiff. Thus, the Court need only evaluate Plaintiff's allegations that Defendant fabricated evidence related to the criminal

charges. Here, Plaintiff does not sufficiently allege either that evidence was fabricated or that such fabrication caused Plaintiff's alleged loss of liberty. Specifically, like in *Mills*, Plaintiff fails to allege that he was convicted or incarcerated as a result of the charges filed against him.

Preliminarily, Plaintiff did not suffer any loss of a liberty interest merely because charges were filed against him. *See, e.g.*, *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (rejecting § 1983 plaintiff's claimed "liberty interest . . . to be free from criminal prosecution except upon probable cause") (internal quotation marks omitted); *Jean v. Collins*, 221 F.3d 656, 659–660 (4th Cir. 2000) ("In the absence of a cognizable injury, such as a wrongful criminal conviction, police suppression of evidence might still give rise to claims under state law. But unless the § 1983 plaintiff can point to a constitutional injury caused by the suppression, no § 1983 remedy will lie."). But even if Plaintiff allege loss of liberty, Prince had adequate evidence to issue citations to him and permissibly decided to do so. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (accused is not "entitled to judicial oversight or review of the decision to prosecute").

Plaintiff was charged with failure to obey a traffic control device[8] (Md. Code Ann., Transp. § 21-201(a)(1)); reckless and negligent driving (*id.* at § 21-901.1(a), (b)); and driving while impaired by alcohol (*id.* at § 21-902(b)(1)(i)). Am. Compl. ¶ 59. Reckless driving is driving "[i]n wanton or willful disregard for the safety of persons or property" or in a manner that indicates the same. Md. Code Ann., Transp. § 21-901.1(a). Negligent driving is driving "in a careless or imprudent manner that endangers any property or the life or person of any individual." *Id.* at § 21-901.1(b).

---

[8]     "Traffic control device" is defined as "any sign, signal, marking or device that . . . [i]s placed by authority of an authorized public body or official to regulate, warn, or guide traffic." Md. Code Ann., Transp. § 11-167.

The Amended Complaint describes Plaintiff's irregular and potentially illegal driving conduct prior to the traffic stop. Plaintiff therefore fails to plead that his Fourteenth Amendment rights were violated by Prince's decision to charge Plaintiff with negligent driving and failure to obey a traffic control device. Further, Prince is correct that the 0.03 result of Plaintiff's BAC test does not prevent Prince from charging Plaintiff with driving while impaired. *See* ECF 23-2 at 16–17. Indeed, "the amount of alcohol in the person's breath or blood shown by analysis . . . is admissible in evidence . . . ." Md. Code Ann., Cts. & Jud. Proc. § 10-307(a)(1). Based on Plaintiff's 0.03 BAC, it would "be presumed [at trial] that [Plaintiff] was not under the influence of alcohol and that the person was not driving while impaired by alcohol." *Id.* at § 10-307(b). But a "favorable" result on a chemical test is not a prerequisite to Defendant's decision to charge Plaintiff for driving while impaired. *Id.* at § 10-308(a) ("The evidence of the chemical analysis does not limit the introduction of other evidence bearing upon whether the defendant was intoxicated or whether the defendant was driving while under the influence of alcohol."); *State v. Werkheiser*, 474 A.2d 898, 904 (Md. 1984) (finding that "chemical analysis is not a prerequisite to a prosecution"); *see also Major v. State*, 358 A.2d 609, 613 (Md. 1976) ("Conviction may be had on any competent evidence legally sufficient to establish the corpus delicti of the crimes and the criminal agency of the accused."). Thus, Plaintiff's BAC results did not preclude a charge of driving while impaired.[9]

---

[9]     Plaintiff suggests that Prince's decision to arrest and charge him was retaliatory. Specifically, after citing Plaintiff, Prince told him that he "should have taken the field sobriety test." Am. Compl. ¶ 65. Plaintiff argues that Prince cited Plaintiff, in part, "to retaliate against Pulsifer for exercising his right under the Fourth Amendment . . . to decline to take a field sobriety test." *Id.* ¶ 66. This argument is unavailing; federal courts have found that a refusal to take a sobriety test can contribute to probable cause for a warrantless arrest. *See, e.g., Bailey v. City of Howell*, 643 Fed. App'x. 589, 596 (6th Cir. 2016).

In summary, Plaintiff does not sufficiently allege that Prince "fabricated" evidence that resulted in his charges. Even if he could do so, Plaintiff still fails to state a viable liberty interest of which he was allegedly deprived. Thus, Plaintiff's Fourteenth Amendment claims fail.

**III.    CONCLUSION**

For the reasons stated herein, Defendant's Motion to Dismiss (ECF No. 23) will be GRANTED, and the Amended Complaint shall be dismissed with prejudice.

A separate Order will issue.

May __30th__, 2024                          _____
                                                                 Matthew J. Maddox
                                                                 United States District Judge